UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
:
ROLF H. KRAEMER,                                : Case No. 1:16-CV-2364
                                                :
    Plaintiff,                              :
                                                :
v.                                              : OPINION & ORDER
                                                : [Resolving Doc. 42]
WHIZCUT AMERICA INC., *et al.*,                 :
                                                :
    Defendants.                             :
                                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 23, 2016, Plaintiff Rolf H. Kraemer filed a patent infringement claim against Defendants WhizCut America Incorporated ("WhizCut America") and WhizCut of Sweden AB ("WhizCut Sweden").[1]

On April 17, 2017, Defendant WhizCut Sweden filed a motion to dismiss for lack of personal jurisdiction.[2]

For the reasons below, the Court **GRANTS** WhizCut Sweden's motion to dismiss.

## I.    BACKGROUND

Plaintiff Kraemer brings a patent infringement claim for U.S. Patent No. 6,652,200 ("'200 Patent") against Defendant WhizCut America and WhizCut Sweden. The '200 Patent protects a tool holder device with an internal coolant system.

Defendant WhizCut Sweden is a corporation organized under Swedish laws[3] with its principal place of business in Helsinborg, Sweden.[4]

---

[1] Doc. 1. Defendant WhizCut America answered, Doc. 10, and WhizCut Sweden filed a special and limited answer without waiving its personal jurisdiction defense, Doc. 31.
[2] Doc. 41. Defendant filed an unredacted version of the motion. Doc. 42. Plaintiff Kraemer opposes. Doc. 46. Defendant WhizCut Sweden replies. Doc. 47.
[3] Specifically, WhizCut Sweden is an aktiebolag, a foreign company limited by shares. Doc. 41 at 2 n.3.
[4] Doc. 1 at 1; Doc. 41 at 2.

Case No. 1:16-CV-2364
Gwin, J.

Plaintiff alleges that WhizCut Sweden weekly exports tool holders from Sweden to Wisconsin—where its "American affiliate" WhizCut America is located—for sale.[5] Plaintiff also alleges that Defendants have jointly offered the tool holders for sale at a trade show in Columbus, Ohio and sold the products in Cleveland, Ohio.[6]

Plaintiff also asserts that Defendant WhizCut Sweden's internet presence is so extensive that jurisdiction is proper here in Ohio.[7]

Defendant WhizCut Sweden argues that it does not export or directly sell any allegedly infringing products in the United States.[8] Rather, WhizCut Sweden completes its transfer of its products to WhizCut America in Sweden. Thus, when WhizCut America transports products to America, WhizCut Sweden is no longer responsible for them.[9]

Defendant WhizCut Sweden further argues that its affiliate, WhizCut America, transacts business in Columbus or Cleveland, Ohio, but Defendant WhizCut Sweden does not.[10]

## II. LEGAL STANDARD

A challenge to this Court's personal jurisdiction triggers a two-part inquiry. First, a plaintiff "must demonstrate that . . . Ohio's long-arm statute [is] satisfied."[11] In relevant part, Ohio's long-arm statute provides

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's
>
> > (1) Transacting any business in this state;
> >
> > (2) Contracting to supply services or goods in this state;

---

[5] Doc. 1 at 2-3; Doc. 46 at 5 (citing *id*. at 20) (packing slip for sale of allegedly patent-infringing product from WhizCut America in Wisconsin to Highland Products in Mentor, Ohio).
[6] Doc. 1 at 3.
[7] Doc. 46 at 3-4.
[8] Doc. 41 at 2.
[9] *Id*. at 5-6; Doc. 41-1 (declaration of Managing Director of WhizCut Sweden Christopher Schmidt).
[10] *Id*. at 2-3.
[11] *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).

2

Case No. 1:16-CV-2364
Gwin, J.

> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting. . . . [12]

Second, if the plaintiff makes a *prima facie* showing of personal jurisdiction under the forum state long-arm statute, the Court considers whether the exercise of jurisdiction comports with constitutional due process.[13]

To exercise personal jurisdiction based on a defendant's actions in this state, the Court must find

> (1) purposeful availment of the privilege of acting in the forum state or causing a consequence in the forum state, (2) a cause of action . . . aris[ing] from activities in the state, and (3) a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[14]

The plaintiff bears the burden of establishing jurisdiction.[15] The court "must consider the pleadings and affidavits in the light most favorable to the plaintiff."[16]

---

[12] Ohio Rev. Code § 2307.382(A)(1-4, 6, 9). The Court selects these subsections of Ohio Rev. Code § 2307(A) because Plaintiff alleges that jurisdiction may be proper under any of them. Doc. 46 at 2.
[13] *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).
[14] *Schneider*, 669 F.3d at 701 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)) (internal quotations omitted).
[15] *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1164 (6th Cir. 1988).
[16] *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).

3

Case No. 1:16-CV-2364
Gwin, J.

### III.     Analysis

The parties argue over multiple theories of personal jurisdiction.[17] The Court addresses each in turn.

**Product Delivery Theory**

Defendant WhizCut Sweden argues that it conducts no business in the United States, let alone Ohio. Defendant states that it delivers the allegedly infringing products to WhizCut America "FCA" or "free carrier," which means the products are "considered to be fully delivered to WhizCut America in Helsinborg, Sweden."[18]

Thereafter, WhizCut Sweden is not responsible for the products. Instead, WhizCut America imports the products through United States Customs and Border Protection.[19]

Plaintiff responds that these shipping terms dictate where "risk of loss transfers from buyer to seller" but has no "impact on liability for patent infringement" or jurisdiction.[20]

In support, Plaintiff cites a Southern District of New York case which states that shipping terms govern risk of loss but do not dictate whether title is transferred.[21]

---

[17] Defendant WhizCut Sweden argues that various exhibits attached to Plaintiff's opposition must be stricken. Doc. 47 at 1-2. Specifically, Defendant argues that the Court cannot consider the Affidavit of Matt Nolan, Plaintiff's Declaration, and Exs. 2-8 because (1) the affidavit is not notarized properly, (2) the declaration does not adhere with 28 U.S.C. § 1746, and (3) the exhibits are unauthenticated. *Id*. Specifically, Defendant complains that the affidavit and declaration lack proper signatures and execution dates and do not purport to stem from personal knowledge. *Id*. at 2. Because the Court grants Defendant WhizCut Sweden's motion to dismiss, it does not address this issue in detail.

[18] Doc. 41 at 5-6 (citing Doc. 41-1, Managing Director of WhizCut Sweden Christopher Schmidt stating deliveries to WhizCut America are FCA).

[19] *Id*. at 6.

[20] Doc. 46 at 5. Plaintiff also argues that certain invoices support jurisdiction, but the Court disagrees. Plaintiff points to a packing slip for sale of an allegedly patent-infringing product from WhizCut America in Wisconsin to Highland Products in Mentor, Ohio. *Id*. at 20. It is clear from the face of this invoice that WhizCut America—rather than WhizCut Sweden—participated in that transaction.

[21] *Id*. (citing *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, No. 12 CIV.5846 PAE, 2015 WL 2257705, at *6 (S.D.N.Y. May 13, 2015), *vacated and remanded on other grounds*, *Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.*, 655 F. App'x 9 (2d Cir. 2016)). Plaintiff also cites two other cases in support, neither of which concern personal jurisdiction. *Id*. at 6 (citing *LightCubes v. Northern Light Prods.*, 523 F.3d 1353, 1365 (Fed. Cir. 2008) (noting that "personal jurisdiction . . . [] is not contested here"); *SEB S.A. v. Montgomery Ward*, 594 F. 3d 1360 (Fed. Cir. 2010), aff'd at *Global-Tech Appliances, Inc. v. SEB*, 131 S. Ct. 2060 (2011)).

Defendant responds with a Fifth Circuit case finding the opposite.[22]

While courts disagree whether shipping terms like "FCA" or "FOB" transfers both risk of loss and title, this Court notes that freight terms likely go to when the risk of loss shifts during transport.[23] For patent-law purposes, the risk of loss underlying a sales contract has little or no bearing on the situs of an allegedly infringing sale or offer to sell.[24]

Regardless, Plaintiff must still show that Defendant has some specific contact with Ohio. Defendant states that it has no contacts with Ohio. Instead, Defendant physically delivers products to its American affiliate in Sweden, and the affiliate takes control over the products before they reach the United States.

Plaintiff says nothing to suggest otherwise. The only specific alleged contact between Defendant WhizCut Sweden and Ohio is the Managing Director's presence at a Columbus trade show. As discussed further below, that allegation is insufficient to support jurisdiction.

**Internet Contacts**

Plaintiff next argues that Defendant WhizCut Sweden's internet presence is so pervasive that jurisdiction is proper. Where the Defendant's contact with the forum is via a website, the Sixth Circuit has adopted the *"Zippo* sliding scale" test to determine whether operation of a website constitutes purposeful availment.[25]

---

[22] *BP Oil Intern., Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337-38 (5th Cir. 2003) (finding the shipping term "CFR" constituted transfer of title and risk of loss at the "port of shipment").
[23] *SEB, S.A. v. Montgomery Ward & Co.*, 412 F. Supp. 2d 336, 340–41 (S.D.N.Y. 2006) (citing *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1375 (Fed.Cir. 2005); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994)) ("Moreover, that a product is sold F.O.B. China or F.O.B. United States, does not, by itself, determine where a product is sold for the purposes of [patent law]. According to the Federal Circuit, 'simply because an article is delivered 'free on board' outside of the forum, a 'sale' is not necessarily precluded from occurring in the forum.'") (internal quotations omitted).
[24] *N. Am. Philips*, 35 F.3d at 1579 (holding that the sale of an allegedly infringing article occurred in the state where the buyer was located, although not necessarily only there, even if the F.O.B. freight terms indicated another location).
[25] *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005).

Case No. 1:16-CV-2364
Gwin, J.

This test "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and passive websites, where the defendant merely posts information on the site."[26] Under this analysis, the operation of an interactive website will often be purposeful availment, while the operation of a more passive website more likely will not.[27]

Plaintiff says Defendant WhizCut Sweden "solicit[s] business from all 50 states" on its website.[28] Further, the website "is interactive, in that it allows users to download product catalogues and submit questions, solicitations, and other communications directly to WhizCut, as well as its representatives, including those in the U.S."[29] Plaintiff says "[t]he web site has also been used to solicit applicants for job openings."[30]

Defendant responds that the case law Plaintiff cites in support actually defeats its argument.[31] Defendant states that its website is passive—no one can purchase products on the website.[32]

After reviewing Defendant WhizCut Sweden's website,[33] the Court finds the website to be "semi-interactive." The website serves mainly to inform visitors about WhizCut and its products. The only interactive components are (1) the "Contact" page and (2) the "Jobs" page. The Contact page[34] allows visitors to complete a form that presumably results in an email to

---

[26] *Id.*
[27] *Id.* (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)).
[28] Doc. 46 at 4.
[29] *Id*.
[30] *Id.*
[31] Doc. 47 at 4 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)).
[32] *Id.*
[33] http://www.whizcut.com/.
[34] http://www.whizcut.com/contact/.

6

Case No. 1:16-CV-2364
Gwin, J.

WhizCut's headquarters with the visitor's contact information and inquiry. The Jobs page[35] allows potential employees to submit a resume via email.

"If the website is semi-interactive, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs."[36] Here, Defendant does not sell products via its website and Plaintiff does not allege that any Ohio residents used the interactive features of Defendant's website.[37] Accordingly, personal jurisdiction over Defendant WhizCut Sweden does not exist based on its website.

**Physical Contacts**

As to contacts with Ohio, WhizCut Sweden admits that its Managing Director Christopher Schmidt attended a 2013 Columbus trade show, but argues he was present as Chairman of the WhizCut America Board of Directors.[38] Responding, the Plaintiff claims that WhizCut Sweden has been present at the Columbus trade show "for several years."[39]

The Court finds no evidence supports Plaintiff's assertion.[40]

**Alter-Ego/Agency Theory**

Finally, Plaintiff argues Defendant WhizCut Sweden is liable for WhizCut America's actions under agency law.[41] Plaintiff states that WhizCut Sweden owns 51% of WhizCut

---

[35] http://www.whizcut.com/jobs/
[36] *Cadle*, 123 F. App'x at 678 (quoting *Zippo*, 952 F.Supp. at 1124) (internal quotations omitted).
[37] *Id*. ("Because Cadle has not alleged that any interaction or exchange of information occurred between Schlichtmann and Ohio residents via the website, personal jurisdiction over Schlichtmann does not exist based on the nature of the website.").
[38] Doc. 41 at 11 n.7; Doc. 41-1.
[39] Doc. 46 at 7.
[40] Specifically, Plaintiff points to "Exhibit 4" in support of its claim that WhizCut Sweden attends the Columbus tradeshows. *Id*. at 7. But the Court is unable to find Exhibit 4 anywhere on the docket or within document number 46—thus, it is not properly before the Court. Furthermore, Defendant describes the document as an unsigned contract between a company and WhizCut America. Doc. 47 at 10. If that characterization is accurate, the document would not support that WhizCut *Sweden* was at the Columbus trade show.
[41] Doc. 46 at 8.

7

Case No. 1:16-CV-2364
Gwin, J.

America and has "full control over its U.S. representative."[42] Further, WhizCut America lists WhizCut Sweden's Managing Director Christopher Schmidt as its incorporator and director.[43]

Defendant argues that Plaintiff has not pled sufficient information to support an alter-ego finding.[44] The Court agrees.

The above allegations are insufficient to show that WhizCut Sweden "exerts so much control over [WhizCut America] that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."[45] Majority ownership and overlap of one corporate employee are not "sufficient facts to overcome the general presumption that one company operates independently from another."[46]

Because Plaintiff cannot satisfy Ohio's long-arm statute, due process analysis is unnecessary.

### IV. CONCLUSION

For the reasons above, the Court **GRANTS** the motion to dismiss the complaint as to Defendant WhizCut Sweden for lack of personal jurisdiction.

IT IS SO ORDERED.

Dated: May 16, 2017                    *s/    James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE

---

[42] *Id.* at 8-9.
[43] *Id.*
[44] Doc. 47 at 13.
[45] *Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *9 (N.D. Ohio Nov. 14, 2014) (citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)).
[46] *Ohio Edison*, 2014 WL 6389564, at *9 (quoting *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, 2006 WL 2225821, at *7 (N.D. Ohio Aug.2, 2006)); *see also Dupee v. Monica*, No. 1:15CV1021, 2016 WL 795857, at *3 (N.D. Ohio Mar. 1, 2016) ("CIE does not purposefully avail itself of the privilege of conducting activities in the forum state merely by owning all or some of a corporation that is subject to jurisdiction.").